IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE ANN KOSSART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 0384 |
| v. ) | |
| ) | Jeffrey T. Gilbert |
| CAROLYN W. COLVIN, ) | Magistrate Judge |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Julie Kossart ("Claimant") brings this action under 42 U.S.C. § 405(g) seeking reversal or remand of the decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment. ECF No. 8.

This matter is before the Court on the parties' cross-motions for summary judgment. ECF Nos. 20, 27. For the reasons discussed herein, the Commissioner's Motion for Summary Judgment [ECF No. 27] is denied. Claimant's Motion for Summary Judgment [ECF No. 20] is granted, and this matter is remanded to the Social Security Administration ("SSA") for further proceedings in accordance with this Memorandum and Opinion.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically substituted as the Defendant-Respondent in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits and supplemental security income on March 30, 2010, alleging a disability onset date beginning October 4, 2009. R. 19. The SSA initially denied the application on September 15, 2010, and upon reconsideration on December 17, 2010. *Id.* Claimant filed a timely request on February 15, 2011 for an administrative hearing (*Id.*), which was held before an Administrative Law Judge ("ALJ") on March 14, 2012. *Id.*, R. 34. Claimant appeared and testified at the hearing where she was represented by a non-attorney representative, Kathleen Halloran. *Id.* Grace Gianforte, a vocational expert ("VE"), and Angela Alvardo, Claimant's daughter, also testified. *Id.*

The ALJ issued a written decision on March 22, 2012, finding Claimant not disabled under the Social Security Act. R. 34. At step one of the required five-step sequential evaluation process, the ALJ found Claimant had not engaged in substantial gainful activity ("SGA") since the alleged onset date, October 4, 2009. R. 21. At step two, the ALJ found that Claimant had the severe impairments of fibromyalgia, obesity, left shoulder arthritis, degenerative disc disease of the lumbar and cervical spine, anemia, depression, anxiety, and post-traumatic stress disorder. *Id.*

At step three, the ALJ determined that Claimant did not have a physical or mental impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id.* The ALJ determined that Claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can never climb ladders, ropes and scaffolds or perform work involving fast-paced production requirements; and she can only occasionally climb ramps

and stairs, reach overhead with her left upper extremity, or be exposed to temperature extremes. R. 24. The ALJ determined Claimant is capable of performing work involving simple instructions and routine tasks, and only simple work-related decisions. *Id.*

At step four, the ALJ found that Claimant was not capable of performing her past relevant work as an administrative clerk, administrative assistant, and retail clerk. R. 32. However, at step five, the ALJ found that considering Claimant's age, education, work experience, and RFC, there exist a significant number of jobs in the national economy that Claimant can perform. R. 33. Taking into consideration Claimant's RFC and additional limitations, the VE testified that Claimant is able to perform the requirements of occupations such as delivery market, cafeteria attendant, and inspector or packer. R. 33-34.

The Social Security Appeals Council denied Claimant's request for review on August 19, 2013 (R. 12), leaving the ALJ's decision as the final decision of the Commissioner. Claimant seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

The district court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger*

*v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). This means that, at a minimum, the ALJ must articulate her analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

### III. BACKGROUND

Claimant suffers from depression, anxiety, and post-traumatic stress disorder due in part to being sexually abused by her stepfather during her teenage years. [ECF No. 16], at 3. Claimant has been hospitalized for attempted suicide three times since the age of fifteen and began receiving mental health treatment in the 1990s. R. 648, 655, 385, 399. From August 2009 through January 2012, Claimant attended mental health therapy twice a month, with once-monthly appointments to monitor her medication. R. 680. Claimant's psychiatric symptoms include nightmares and flashbacks of the sexual abuse, depressed mood, emotional withdrawal, decreased energy, and social isolation. Claimant takes Diazepam, Cymbalta, Tramadol, and Seroquel, among other medications, to help manage these symptoms. R. 251. At her hearing, Claimant testified that the flashbacks make her uncomfortable and afraid to go out. R. 53-54.

Compounding her mental impairments, Claimant alleges disability due to herniated discs in the lumbar spine, degenerative disk disease, sciatica, scoliosis, fibromyalgia, bursitis in both hips, diverticulitis, and anemia. R. 176. Claimant testified that daily pain inhibits her ability to go out, shower, and complete household chores on her own. R. 50, 51. In October 2005, Claimant began a series of three epidural steroid injections for her herniated discs. R. 340. Claimant's back pain persisted after the steroid injections, and she was advised to seek treatment for fibromyalgia as the source of her back pain. R. 613. In 2006, Claimant went to the

emergency room on three different occasions due to severe back, neck, or hip pain. R. 447, 471, 485. In June and July of 2010, Claimant attended physical therapy to help manage her pain from the fibromyalgia and herniated discs. Her physical therapy sessions ended early due to poor attendance. R. 637-39.

In August 2010, exams of Claimant's lumbar and cervical spine were taken as a result of Claimant's complaints of neck and lower back pain. The examination revealed degenerative disc disease between L5-S1 and evidence of facet joint arthropathy. R. 557. Also at this time, an x-ray of Claimant's shoulder revealed a mild degree of degenerative disease at the glenohumeral joint. R. 558. In May 2011, a CT of Claimant's spine revealed degenerative disc disease at C3-C4, C4-C5, C5-C6, and C6-C7, as well as evidence of facet joint disease at C3-C4 and C4-C5. R. 641. The exam showed that Claimant's degenerative disc disease of the lumbar spine had worsened, and there was disk protrusion at L4-L5. R. 643.

## IV. DISCUSSION

Claimant argues the decision of the Commissioner should be reversed or remanded for the following four reasons: (1) the ALJ erred in the weight she afforded Claimant's treating sources; (2) the ALJ erred in relying on dated opinions of the state agency doctors; (3) the ALJ did not sufficiently account for Claimant's psychological limitations; and (4) the Appeals Council erroneously dismissed new evidence. [ECF No. 16], at 1. After reviewing the parties' briefs and the administrative record, the Court concludes that the ALJ failed to adequately explain her decision not to give controlling weight to Claimant's treating physician and failed to articulate her reasons for giving the opinion of Claimant's treating physician no weight. The Court concludes this is cause for remand and need not go further in analyzing Claimant's other arguments.

## A. The ALJ Did Not Adequately Address The Opinion Of Claimant's Treating Psychiatrist

Social Security regulations require ALJs to give controlling weight to a claimant's treating physician, so long as the treating physician's opinion is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). However, when an ALJ decides not to give controlling weight to a claimant's treating physician, the ALJ must provide a sound explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 § C.F.R. 404.1527(d)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

Moreover, even when an ALJ offers good reasons for declining to give controlling weight to a treating physician's opinion, the ALJ must determine what, if any, weight that opinion should carry. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). In determining how much weight to afford a treating physician's opinion, the regulations instruct ALJs to consider factors such as the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency of the physician's opinions. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)).

Dr. Angela Lima ("Dr. Lima") was Claimant's treating psychiatrist from August 2009 until January 2012. R. 646, 705. In March 2011, Dr. Lima completed a Mental Residual Functional Capacity questionnaire for Claimant, in which she opined that Claimant has serious limitations in her ability to maintain attention for two-hour segments, sustain an ordinary routine without special supervision, deal with normal work stress, and carry out detailed instructions. R.

596-597. Dr. Lima also found that Claimant is unable to meet competitive standards in her ability to deal with the stress of semi-skilled work, maintain regular attendance, complete a normal workday or workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Lima estimated that Claimant's mental impairments would cause her to miss more than four days of work every month. R. 598. According to the VE who testified at Claimant's hearing, missing that many days of work would render Claimant incapable of maintaining employment. R. 64.

The ALJ gave no weight to Dr. Lima's opinion, and in explaining why Claimant's treating psychiatrist was not given controlling weight, the ALJ wrote:

> Dr. Lima's opinion is inconsistent with the claimant's longitudinal mental health treatment notes with Dr. Lima. Dr. Lima's opinion was written during a short-lived period of worsening symptoms and is not supported by the claimant's longitudinal treatment from the alleged onset date to the date of this decision. Further, this opinion is inconsistent with Dr. Lima's statement that the claimant had a GAF score of 65 in the year prior to the date of the opinion and with the claimant's activities as reported in the mental health treatment notes. R. 31.

Although the ALJ spent two full pages reciting evidence from the record related to Claimant's mental impairments, she devoted just three sentences to explaining why the opinion of Claimant's longstanding treating psychiatrist was not given controlling weight and, rather, why it deserved no weight at all. This three-sentence explanation is insufficient on two counts. First, it fails to provide adequate reasons for rejecting the opinion of Claimant's treating psychiatrist. Second, it offers no insight into the factors the ALJ considered when determining how much weight to assign Dr. Lima's opinion.

7

### 1. The ALJ Failed To Explain Why Dr. Lima's Opinion Was Not Given Controlling Weight

Internal inconsistencies in the record may provide good cause for denying a treating physician's opinion controlling weight. *Clifford*, 227 F.3d at 871. However, an ALJ cannot meet her burden of soundly explaining why a treating physician's opinion is not given controlling weight simply by stating that the physician's treatment notes do not support the physician's medical opinion, without more. *See Punzio*, 630 F.3d 710 (where the Court deemed insufficient the ALJ's explanation that the treating physician's opinion was not given controlling weight because the physician's mental residual functional capacity assessment contradicted the physician's treatment notes). When so little analysis is offered, it appears to the Court that the ALJ is saying the treating physician does not get controlling weight "because I say so." In the present case, the ALJ should have explained why Dr. Lima's treatment notes were inconsistent with her opinion that Claimant would be absent from work more than four days per month and is unable to meet competitive standards in certain areas. By not doing so, the ALJ failed to meet her burden of soundly explaining why the treating physician's opinion was not given controlling weight. *See Clifford*, 227 F.3d at 869-71 (explaining how the ALJ needed to articulate why the treating physician's statement that the claimant had mild hand osteoarthritis was necessarily inconsistent with the physician's opinion that the claimant was severely limited in her ability to work).

The ALJ also offered that Dr. Lima's opinion is inconsistent with her treatment notes because in the year prior to the date of her opinion (2010), Dr. Lima assessed Claimant's Global Assessment of Functioning ("GAF") score at 65. However, by cherry-picking one GAF score, the ALJ demonstrated a "fundamental, but all-too-common misunderstanding of mental illness." *Punzio*, 630 F.3d 710. "A person who suffers from a mental illness will have better days and

8

worse days, so a snapshot of any single moment says little about her overall condition." *Id.* To that point, the record reflects that Claimant's GAF score fluctuated significantly over time. In August 2009, Claimant was assessed with a GAF score of 50. R. 650. Two months later, in October 2009, Claimant's GAF score had risen to 55. R. 657. In July 2010, Claimant's GAF score peaked at 65. R. 671. By September 2010, however, Claimant's GAF score had dipped down to 45. R. 571. In March 2011, when Dr. Lima rendered her opinion, Claimant had a GAF score of 50. R. 594. Viewing the record as a whole, it is clear that no single GAF score is truly reflective of Claimant's mental condition. Rather, Claimant's GAF scores valley and peak, consistent with the nature of her mental conditions. The ALJ needed to support her determination by doing more than pointing to one GAF score in the record. She should have analyzed and explained whether Dr. Lima's opinion was consistent with her treatment notes *as a whole*. *Id.* The ALJ's failure to properly articulate her decision not to give Claimant's treating psychiatrist controlling weight is cause for remand in this case.

### 2. The ALJ Failed To Articulate Her Reasoning For Giving Dr. Lima's Opinion No Weight

It is also problematic that the ALJ offered no insight into the factors she considered when determining how much weight to assign Dr. Lima's opinion. SSR 96-2p states that an ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p; *Nichols v. Colvin*, 2013 WL 4495524, at *11 (N.D. Ill. Aug. 21, 2013). The factors noted in 20 C.F.R. § 404.1527 should have guided the ALJ's discussion of how much weight to give Dr. Lima's opinion, yet there is nothing in the opinion from which the Court can infer the ALJ considered the length, nature, and

9

extent of Dr. Lima's treatment relationship with Claimant, Dr. Lima's specialty, the frequency of her examinations of Claimant, the types of tests performed, or the consistency of her opinions. *Moss*, 555 F.3d at 561. In fact, several of the 20 C.F.R. § 404.1527 factors suggest that Dr. Lima's opinion should be given greater weight. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (remanding where the treating physician was not given controlling weight although she was a psychiatrist who treated Claimant on a monthly basis, and reported consistent findings throughout the course of her treatment history with the claimant). On remand, the ALJ will have an opportunity to consider and address these factors.

### B. The ALJ Should Have Contacted Claimant's Treating Rheumatologist

The ALJ also gave no weight to the opinion of Dr. M. Sengupit ("Dr. Sengupit"), Claimant's treating rheumatologist. R. 30. On February 28, 2011, Dr. Sengupit completed a Residual Functional Capacity questionnaire, opining that Claimant's fibromyalgia will frequently interfere with the attention and concentration needed to perform even simple work tasks. R. 590. Dr. Sengupit further opined that Claimant needs to take unscheduled breaks in an 8-hour workday, is able to sit and stand or walk for less than two hours in an 8-hour workday, and is only able to sit or stand for fifteen minutes before needing to change positions. R. 591. In explaining why the ALJ afforded Dr. Sengupit's opinion no weight, she wrote:

> At the time that this opinion was rendered, Dr. Sengupit had seen Claimant twice. In addition, the record does not contain any treatment records from Dr. Sengupit. I question whether such limited contact without supporting documentation of clinical findings can be considered a treating relationship. Further, the extensive limitations assessed by Dr. Sengupit are not supported by the medical evidence of record . . .." R. 31.

The mere fact that Dr. Sengupit's opinion was rendered on Claimant's third visit does not disqualify Dr. Sengupit as a treating source. In fact, the regulations make clear that SSA

considers someone who has treated the claimant "only a few times or only after long intervals (e.g., twice a year)" to be a treating source "if the nature and frequency of the treatment or evaluation is typical of the claimant's condition." 20 C.F.R. § 404.1502. As such, Dr. Sengupit was a treating source despite the fact that Dr. Sengupit had seen Claimant only three times.

Moreover, and more importantly here, "an ALJ has a duty to solicit additional information to flesh out an opinion for which the medical evidence is not readily discernible." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(3); S.S.R. 96-2p at 4 ("[I]n some instances, additional development required by a case—for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings—may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between the treating source's medical opinion and the other substantial evidence in the case record.")).

In the present case, that means that if the ALJ could not make sense of Dr. Sengupit's opinion without the treatment notes, she should have asked Dr. Sengupit to submit those notes before determining how much weight to afford Dr. Sengupit's opinion, and ultimately, before issuing a disability decision. Had the ALJ requested Dr. Sengupit's treatment notes, she might have found that the limitations Dr. Sengupit assessed were in fact supported by substantial medical evidence. The ALJ erred by not obtaining those treatment notes and fleshing out Dr. Sengupit's opinion for which the medical evidence was not readily discernible. This is especially true in light of the fact that Claimant was not represented by an attorney at her hearing before the ALJ. An ALJ's duty to develop a full and fair record is "enhanced when a claimant appears without counsel." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). In such cases, the ALJ is required to supplement the record as necessary by, for example, contacting treating

11

physicians and medical sources to request additional records and information. *Id.* (Citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)). On remand, the ALJ should solicit the treatment notes from Dr. Sengupit and reconsider the physician's opinion in light of all the evidence in the record.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's motion for summary judgment [ECF No. 27] is denied. Claimant's motion for summary judgment [ECF No. 20] is granted. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 3, 2016